BOARD OF PUBLIC INSTRUCTION OF PALM BEACH COUNTY, FLOR-IDA, Plaintiff-Appellee,

v.

Wilbur J. COHEN, Secretary of the Department of Health, Education and Welfare, et al., Defendants-Appellants.

No. 27073.

United States Court of Appeals
Fifth Circuit.

June 3, 1969.

William A. Meadows, Jr., U. S. Atty., Miami, Fla., Aaron A. Foosaner, First Asst. U. S. Atty., Stephen J. Pollak, Asst. Atty. Gen., David B. Marblestone, David L. Rose, U. S. Dept. of Justice, Washington, D. C., for defendants-appellants.

Michael E. Jackson, Palm Beach, Fla., Jackson & Jackson, Palm Beach, Fla., for plaintiff-appellee.

Before COLEMAN and GOLDBERG, Circuit Judges, and SKELTON, Judge of the Court of Claims.*

COLEMAN, Circuit Judge:

The Secretary of Health, Education, and Welfare formally deferred consideration of applications by the Palm Beach County School Board for Federal financial assistance to *new programs or activities*. Upon petition of the School Board, and after a hearing, the District Court enjoined the deferral "during the pendency of the administrative proceeding now being conducted within the Department of Health, Education, and Welfare". This Court stayed the injunction pending appeal. The parties have not advised us that the injunction has expired of its own limitations. We reverse.

There is no dispute about the facts of the deferral and they may be quickly stated. Federal funds previously approved are not involved in the litigation. Only new programs or activities are af-

\* Sitting by designation as a member of this panel.

fected. Palm Beach was operating under a plan of desegregation approved by the Office of Education. On February 11, 1968, HEW notified the school authorities that adequate progress was not being made toward the elimination of a dual, segregated system. The notification stated that in the absence of appropriate corrective action administrative proceedings for the termination of Federal financial assistance would be initiated. The upshot of it was that on August 20, 1968, the deferral was set in motion by written notice, with Palm Beach being notified of its right to a hearing. Under the terms of the Fountain Amendment of 1966, 42 U.S.C. § 2000d–5 (Supp. III, 1965–1967)[1] such a hearing, within sixty days, was mandatory [unless the parties agreed otherwise]. The hearing, in fact, was set for December 12, 1968. On August 26, 1968, Palm Beach filed its complaint in the District Court, praying for injunctive relief. On this date Palm Beach had no application pending for new programs or activities. None was filed until the latter part of October. The injunction was entered on December 11, the day before the administrative hearing was to begin. The District Court held as a matter of law that the practice of deferral of Federal financial assistance prior to a hearing on the merits of the allegations of non-compliance, and before non-compliance has been proved, *is unconstitutional in that it is in violation of the Due Process clause of the Fifth Amendment.*

Section 602 of Title 6, of the Civil Rights Act of 1964, 42 U.S.C. § 2000d–1, specifically provides:

"Compliance with any requirement adopted pursuant to this section may be effected (1) by the termination of *or refusal to grant* (emphasis added) or to continue assistance under such program or activity to any recipient as to whom there has been an express finding on the record, after an opportunity for hearing, of a failure to comply with such requirement, but such termination or refusal shall be limited to the particular political entity, or part thereof, or other recipient as to whom such a finding has been made and, shall be limited in its effect to the particular program, or part thereof, in which such non-compliance has been so found, or (2) by any other means authorized by law * * *".

By the plain terms of this statute there can be no *refusal to grant assistance* until there has been an express finding on the record, after an opportunity for hearing, of a failure to comply with desegregation requirements. Notice of the failure is an indispensable prerequisite of the hearing, else there is nothing to hear. If the School District requests it, there must be a hearing. Then, there must be a finding of non-compliance on the record. In this case Palm Beach had notice but on the date of the notice it had not had a hearing and there were no findings on the record. Thus, by the plain terms of the

---

1. The "Fountain Amendment", 80 Stat. 1209 (1966), 42 U.S.C. § 2000d–5 (Supp. III, 1965–67):

The Commissioner of Education shall not defer action or order action deferred on any application by a local educational agency for funds authorized to be appropriated by this Act, by the Elementary and Secondary Education Act of 1965, by the Act of September 30, 1950 (Public Law 874, Eighty-first Congress), by the Act of September 23, 1950 (Public Law 815, Eighty-first Congress), or by the Cooperative Research Act, on the basis of alleged non-compliance with the provisions of this subchapter for more than sixty days after notice is given to such local agency of such deferral unless such local agency is given the opportunity for a hearing as provided in section 2000d–1 of this title, such hearing to be held within sixty days of such notice, unless the time for such hearing is extended by mutual consent of such local agency and the commissioner, and such deferral shall not continue for more than thirty days after the close of any such hearing unless there has been an express finding on the record of such hearing that such local educational agency has failed to comply with the provisions of this subchapter [the provisions of Title VI] * * *.

statute, if this deferral was a refusal there was a violation of the Act, particularly of the due process prescribed by the Act.

The Secretary argues, of course, that the deferral was not a refusal; that it was only an intermediate step toward determining if there should be one. We need not cite the many cases in many fields which have held that a deferral may, in fact, be a denial. For example, finality of judgment necessary to an appeal is often based on such considerations. Refusal is commonly defined as a rejection, a denial of what is asked. Here, there was neither rejection nor denial. The Secretary, in compliance with the Fountain Amendment, said, in effect, "We shall submit the matter of your eligibility to an impartial trial examiner on a record which you will have an opportunity to compile. We must do this within sixty days, if you insist on that time limitation. The statute commands the examiner to decide within thirty days of the hearing. If the examiner finds that you are not operating a segregated school system that is the end of the matter. On that score you cannot and will not be denied Federal financial assistance. If, however, he should hold to the contrary you are entitled to further review, including an appeal to the courts".

■ This is in compliance with the statute, as amended, and it squares with due process. It guarantees that no deferral can live longer than ninety days, ordinarily a brief period for action by a department of the Federal Government.

■ We are familiar with the debate in the House of Representatives as set out in pertinent part in Footnote 8 to Lee County School District Number 1 v. Gardner, (D.S.Car., 1967) 263 F.Supp. 26. The give and take of Congressional debate, however, provides no firm ground to obviate the plain directions of a clearly written enactment. If Congress had so desired it could as easily have prohibited deferrals as to have defined the terms upon which they are to be processed. Actually, what Congress very commendably did was to see to it that deferrals may never be used as denials. It allowed the Secretary only ninety days in which to make certain that Federal assistance is to be extended only in compliance with the Constitution.

Briefly restated, this deferral was not a rejection or a denial and hence, in the words of the statute, was not a refusal to grant the assistance sought. Therefore, the injunction should not have been granted.

We find it unnecessary to pass upon the other attacks levelled by the complaint. The issue is both plain and simple. If Palm Beach is not operating a discriminatory school system it must have the funds. If it is operating a segregated system it may not receive them. In either event it has no further room to complain.

The Judgment of the District Court will, therefore, be reversed. The injunction, which we have heretofore stayed, will be dissolved.

Reversed.

SKELTON, Judge (concurring):

I concur in the opinion in this case but I do so only because existing law leaves me no other choice. I take advantage of this opportunity to record the reasons for my reluctance.

It is my belief that a system which authorizes a government official in Washington, in his sole discretion, to cut off funds to a local school district under the guise of a "deferral", without a prior hearing and determination of the merits of the matter, contravenes the fundamental principles upon which this federal republic was founded. It is true that under the Fountain Amendment to the Civil Rights Act of 1964 (42 U.S.C. § 2000d-5 (Supp. III, 1965–1967)), a hearing must be held, after notice, within sixty days of the notice and the deferral cannot continue more than thirty days after the hearing unless there is a finding of non-compliance at the hearing. At first blush, this would appear

to protect the rights of the school district involved. As a practical matter it does not, for the system produces contrary results in most cases. It is generally a foregone conclusion that the decision of the examiner at the hearing will go against the school district in the overwhelming majority if not all, of the cases. It would take an independent examiner, indeed, who would decide in favor of a school district when he knows that for all practical purposes Washington has already made a decision against the school district when it issued the deferral notice. Consequently, in most cases, the hearing is just a formality for the purpose of making a record on which the district can appeal if it desires to do so. In the event of an appeal by the district, the deferral remains in effect until the district exhausts its administrative remedies and while the case is in court. This could take from one to two years, or more. During this time, the funds of the district are cut off. This means, for all practical purposes, the district has been denied these funds during this period.

To put it another way, the school children of the district have been denied the funds during the pendency of the case. A period of from one to two years or more taken out of the lives of these school children is gone forever, especially for those who finish school during the time in question. The benefits they would have received from the funds thus denied them during this period can never be restored to them. Therefore, the so-called "deferral" is really a denial during the pendency of the proceedings.

Furthermore, the withholding of funds by the government has the appearance of punishment or penalty against the trustees of the school district and the adults living in the district because they have not complied with orders issued from HEW in Washington. The sad part about it is that the denial of funds does not punish the trustees or the adults, because they are not in school. The punishment and deprivation is inflicted on the school children themselves. They are the ones who suffer.

The cutting off of funds from school districts by the HEW is done on the theory that it will help children of minority races in such districts. As a matter of fact, in many cases, when this action is taken, the resulting hardships and deprivations fall on the children of the minority races. Their parents are not financially able to supply the teachers, buildings, and programs which the withheld funds would have supplied, whereas, the more affluent parents of children of the white race may be able to supply them without government help. So, in many cases, the program hurts the very children it was designed to help.

This is the system Congress has created. The courts are powerless to do anything about it. Until Congress sees fit to change it, we will have to live with it.