UNITED STATES of America,
Plaintiff,

v.

CITY OF CHICAGO et al.,
Defendants.

Renault ROBINSON et al.,
Plaintiffs,

v.

James B. CONLISK, Jr., et al.,
Defendants.

Tadeo Robert CAMACHO et al.,
Plaintiffs,

v.

James B. CONLISK, Jr., et al.,
Defendants.

Renault ROBINSON et al.,
Plaintiffs,

v.

William E. SIMON et al.,
Defendants.

Nos. 73 C 2080, 70 C 2220,
73 C 1252 and 75 C 79.

United States District Court,
N. D. Illinois, E. D.

April 21, 1975.

Philip B. Kurland, Norman J. Barry, Donald E. Egan, Alan L. Unikel, Rothschild, Marry & Myers, Chicago, Ill., for Louis Arado, John Minogue, James O'Neill, Martin Barrett, Richard Pekarek, William Kasniak, Thomas Reilly, Erwin O'Bartuch, Joseph McManus, Michael Chido, intervenor-defendants.

Richard Gutman, Mary L. Sfasciotti, Chicago, Ill., for Carolyn Burauer, Barbara Chiczewski, Sharon Doherty, Bonita Drefs, Frances Jamen, Hattie Knazze, Shirley Stapleton, and Pamela West, intervenor-plaintiffs.

Frank Cicero, Jr., Thomas A. Gottschalk, John P. Wilson, Jr., Gary M. Elden, Kirkland & Ellis, Chicago, Ill., James M. Johnstone, Kirkland, Ellis & Rowe, Washington, D. C., for Renault Robinson, and others.

Ilana Diamond Rovner, Asst. U. S. Atty., Chicago, Ill., Donald Pailen, Francis R. Cronin, Elaine C. Asable, Dept. of Justice, Washington, D. C., for the Government.

William R. Quinlan, Acting Corp. Counsel, Richard J. Phelan, Earl L. Neal, Sp. Counsel, Daniel R. Pascale, Ann Asker, Jerome A. Siegan, Roseann

Oliver, Asst. Corp. Counsel, Chicago, Ill., for the City of Chicago, and others.

Michael L. Meyer, Barry S. Alberts, Schiff, Hardin & Waite, William J. McNally, Judith Bernstein, Chicago, Ill., for Camacho, and others.

Medard Narko, Lloyd M. Sonenthal, Chicago, Ill., for intervenor-defendants Roy Isakson, Fred Sansone, Robert Buckner, Larry Payne, Martin Leal, George Flood, and others.

Perry L. Fuller, E. Michael Kelly, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, James J. Ahern, Chicago, Ill., for intervenor-defendants Nicholas J. McNamara, John Meade, Thomas W. Toolis, John Hagemann, Richard Kraft, James Moore, Michael J. Connolly, Edward Wodnicki, John F. Kelly, August J. Annerino, Thomas P. McGady, Austin J. Kennedy, Howard A. Knight, Ronald R. Rubin, Paul S. Jankowski, Robert W. Goldsmith, William J. Collins, Nestor W. Chakonas.

Philip B. Kurland, Norman J. Barry, Donald E. Egan, Alan L. Unikel, Rothschild, Marry & Myers, Chicago, Ill., for Arado intervenors.

## MEMORANDUM DECISION

MARSHALL, District Judge.

Two motions are ready for decision in these consolidated civil rights actions:

(1) in Robinson et al. v. Simon et al., 75 C 79, intervenor-defendant City of Chicago moves for modification of an order entered December 18, 1974, when the action was pending in the District Court for the District of Columbia, enjoining defendants Simon, et al. from making further so-called revenue sharing payments to the City;

(2) in all of the consolidated cases, Tadeo Camacho, et al., (who are the named plaintiffs in 73 C 1252) move for an order requiring defendant City of Chicago and its officials to comply with an interim hiring agreement and order entered by this court on December 16, 1974.

The background facts and contentions of the parties through November 7, 1974 have been reported in Robinson et al. v. Conlisk et al., (N.D.Ill.) 385 F.Supp. 529; United States v. City of Chicago et al., (N.D.Ill.) 385 F.Supp. 540; United States v. City of Chicago et al., (N.D.Ill.) 385 F.Supp. 543. Before turning to the pending motions, some additional facts and background should be recited.

## I. FACTS AND BACKGROUND

On September 14, 1973, Renault Robinson, a black Chicago Police Officer, the Afro-American Patrolman's League, an incorporated organization of black Chicago Police Officers (AAPL), and the National Association for the Advancement of Colored People of Chicago (NAACP) (all of whom will from time to time be referred to as the "Robinson plaintiffs") filed with the Department of the Treasury and administrative complaint against the City of Chicago (the City) and various of its officials alleging that the City was using so-called revenue sharing funds received by it under the State and Local Assistance Act of 1972, 31 U.S.C. § 1221 et seq., in violation of Section 122(a) of the Act which provides:

No person . . . shall on the ground of race, color, national origin, or sex be excluded from participating in, be denied the benefits of, or be subjected to discrimination under any program or activity funded in whole or in part with funds made available under [the Act]. 31 U.S.C. § 1242 (a).

Specifically, the administrative complaint alleged that the City was using the federal funds it had and would receive to finance its police department which, in turn, was guilty of racially discriminatory employment and promotion policies and practices. The allegations were similar to those then pending in this court in Robinson et al. v. Conlisk et al., 70 C 2220. The administrative complaint was buttressed, however,

by the allegation that during the year 1972 the Law Enforcement Assistance Administration (LEAA) of the Department of Justice, had investigated the Chicago Police Department and had found "in several key areas, current personnel practices and procedures [of the Department which] clearly have an adverse effect on minority group members, both as entry candidates and as members of the Department." The administrative complaint prayed that the Secretary of the Treasury (the Secretary), *inter alia,* conduct his own investigation of the charges pursuant to Section 122(b) of the Act (31 U.S.C. § 1242(b)) and, upon a determination that the City had violated Section 122(a) as alleged, withhold future payments of revenue sharing funds until the City complied with the law. It also prayed that the Secretary demand repayment of all such funds as had been allocated to the City's police department during the period of non-compliance.

While the administrative complaint was not ignored by the Department's Office of Revenue Sharing, none of the action requested of the Secretary was taken. Accordingly, on February 7, 1974, the Robinson plaintiffs commenced a civil action in the United States District Court for the District of Columbia against the Secretary and the Director, Chief Counsel and Compliance Manager of the Office of Revenue Sharing (ORS Officials). Jurisdiction was invoked under 28 U.S.C. §§ 1331, 1343, 1361, 2201, 2202 and 5 U.S.C. §§ 701–706. The complaint alleged plaintiffs' prior unsuccessful administrative efforts. It proceeded to allege that the City had allocated a major portion of its 1974 revenue sharing allotment to its police department which was engaged in racially discriminatory employment and promotion practices and policies in violation of Section 122(a) of the Act. Again, the allegations were similar to those made here in 70 C 2220. The complaint prayed a declaratory judgment defining the duties of the Secretary and the ORS Officials;

a preliminary injunction ordering them to pursue remedial administrative action against the City aimed at enforcing the statutory proscription against the use of federal revenue sharing funds for racially discriminatory purposes and to report regularly to the court on the progress of the administrative proceedings; a preliminary injunction prohibiting the disbursement of additional revenue sharing funds to the City until its police department was found to be in compliance with all applicable anti-discrimination requirements of the Act; and finally, a permanent injunction incorporating the terms of the preliminary injunction and "also prohibiting the [Secretary and ORS Officials] from permitting the City . . . to retain any federal revenue sharing funds disbursed to it during any period in which the [Chicago Police Department] is found to have engaged in racially discriminatory employment practices."

While the City was not made a defendant in the District of Columbia action, it is clear that it was, at all times, aware of the action and, as subsequently appears, ultimately it intervened in the action as a defendant and obtained its transfer here under 28 U.S.C. § 1404(a).

The action proceeded apace in the District of Columbia. During its early days, the Director of ORS filed what was denominated a "Statement of Reasons" in which he stated that a civil rights investigation conducted by ORS in October, 1973, had revealed "evidence of discrimination within the [Chicago] police department." Plaintiffs thereupon moved for summary judgment and a preliminary injunction against the disbursement of additional revenue sharing funds to the City.

In the course of a memorandum order entered April 4, 1974, the court made certain rulings. It stated that in view of the fact that ORS had found evidence of discrimination within the Chicago Police Department, the "Secretary is under a non-discretionary duty to follow the procedures" of Section 122(b) of the

Act, 31 U.S.C. § 1242(b).[1] Accordingly, the Secretary was ordered "to notify the Governor of Illinois of the Secretary's determination of non-compliance under 31 U.S.C. § 1242(a), and request the Governor to secure compliance as required by 31 U.S.C. § 1242(b)." The court also declared that the Secretary had the authority to defer federal revenue sharing funds pursuant to a formal administrative hearing as provided by Title VI of the Civil Rights Act of 1964. It also stated that the Secretary had the authority to defer payment of such funds pending the outcome of such an administrative proceeding, citing Board of Public Instruction v. Cohen, 413 F.2d 1201 (5th Cir. 1969). The court then stated that in view of the civil action then pending in this court brought by the Attorney General regarding "the same discrimination charges made by the instant plaintiffs" (i. e., United States v. City of Chicago et al., 73 C 2080) it was premature to decide whether the Secretary should be ordered to conduct administrative proceedings and to defer payment of revenue sharing funds pending the outcome of such proceedings. Thus the motion for a preliminary injunction was denied without prejudice to its renewal at a later date.

On April 9, 1974, the ORS wrote to the Mayor of the City of Chicago and the Governor of Illinois under Section 122(b) of the Act as they had been directed to do by the District of Columbia court. There ensued a series of letters in which, *inter alia*, the City, through its counsel, denied that its police department was engaged in discriminatory employment and promotion practices and policies.

On May 29, 1974, the Secretary and ORS referred the Robinson-AAPL-NAACP charges of the City's violation of Section 122(a) to the Attorney General pursuant to Section 122(b)(1). On May 30, 1974, the United States, in the action then pending here as United States v. City of Chicago et al., No. 73 C 2080, sought and obtained leave to amend its complaint which charged racial discrimination in the Chicago Police Department under 42 U.S.C. §§ 1981 and 2000e et seq. to include allegations that that same conduct violated Section 122(a).

The day that the Government tendered the amendment to its complaint here was the day upon which the evidentiary hearing on plaintiffs' several motions for preliminary injunction regarding the hiring and promotion practices of the Chicago Police Department were scheduled to begin. When the Government presented its motion to amend, it stated that it did not seek preliminary injunctive relief in regard to the alleged violations of Section 122(a). Accordingly, the preliminary injunction proceedings here were not concerned with those allegations.

The Robinson plaintiffs in the District of Columbia action were not satisfied with the action taken by the Attorney General on the referral by ORS of their complaint and on June 3, 1974, they renewed their motion for summary judgment and preliminary relief. They urged upon the District of Columbia court that the City remained out of compliance with Section 122(a), that voluntary compliance efforts which had been initiated pursuant to the court's April 4 order had failed, that ORS had failed to

---

1. Whenever the Secretary determines that a . . . unit of local government has failed to comply with subsection (a) of this section [i. e., the anti-discrimination provisions previously quoted] or an applicable regulation, he shall notify . . . the Governor of the State in which such unit is located . . . of the non-compliance and shall request the Governor to secure compliance. If within a reasonable period of time the Gov-

ernor fails or refuses to secure compliance, the Secretary is authorized (1) to refer the matter to the Attorney General with a recommendation that an appropriate civil action be instituted; (2) to exercise the powers and functions provided by Title VI of the Civil Rights Act of 1964 [i. e., 42 U.S.C. § 2000d et seq.] or (3) to take such other action as may be provided by law.

adopt procedures for administrative deferral of payments to Chicago, that the Department of Justice had sought no effective revenue sharing relief in the action in this court, that ORS defendants intended to go forward with further revenue sharing payments to the City, including a July 5, 1974 payment of $16,994,394 even if non-compliance continued, and that plaintiffs continued to suffer injury to their civil rights. Thus they sought an order enjoining further revenue sharing payments to the City until its police department had been determined by ORS to be in compliance with Section 122(a).

The Secretary and ORS Officials resisted the renewed motion relying on their referral to the Attorney General and the resulting revenue sharing amendment to the Government's complaint in this court. Thus, despite the fact that the amendment here had not sought preliminary relief in respect to revenue sharing funds, the Secretary and the ORS Officials contended that any preliminary withholding of funds by the District of Columbia court "would be a prerogative of the Department of Justice and the Federal Judge now hearing the police department case in Chicago."

On June 28, 1974, the District of Columbia court issued a memorandum opinion and order denying the Robinson plaintiffs' renewed motion for preliminary relief. It stated:

> . . . the only duty imposed upon the Secretary after he has determined the impossibility of securing compliance with [31 U.S.C.] § 1242(a) is to follow one of three alternate courses. The Secretary has selected the first alternative [i. e., referral of the matter to the Attorney General with the recommendation that an appropriate civil action be instituted] thereby fulfilling his statutory duty until such time as non-compliance has been determined by the courts. (Slip opinion p. 2.)

There the matter rested until November 7, 1974 when this court found and concluded that the policies and practices of the City with respect to the employment of patrol officers and the promotion of Sergeants were prima facie racially and sexually discriminatory and in violation of 42 U.S.C. §§ 1981 and 2000e et seq.[2] United States v. City of Chicago, 385 F.Supp. 543 (N.D.Ill.1974). As a consequence, the City and its officials were preliminarily enjoined from engaging in any act or practice which has the purpose or effect of discriminating against any employee of or any applicant or potential applicant for employment with the Chicago Police Department because of such individual's race, sex, color or national origin. Utilization of the 1971 Patrolman's Eligibility List and the 1973 Sergeant's Eligibility List were preliminarily enjoined because they were the product of racially and sexually discriminatory examinations, practices and policies. The preliminary injunction was issued "without prejudice to an application by the parties, upon a showing of necessity, for interim relief which would permit appointments from the current eligible lists upon an equitable basis pending the development of new hiring and promotion examinations and practices." United States v. City of Chicago, *supra,* at 562.

On November 26, 1974, the Robinson plaintiffs renewed their motion in the District of Columbia action for summary judgment and for an order directing the temporary withholding of revenue sharing payments to the City. The motion was based on the preliminary injunction findings made here which were tendered to the District of Columbia court. Furthermore, plaintiffs urged that despite the fact that the City's police department had been found to have engaged in unlawfully discriminatory policies and practices regarding employment and promotion, ORS nevertheless intended to continue to make revenue

---

2. As previously noted, the alleged Section 122(a) violations relating to revenue sharing were not pressed in the preliminary injunction hearing.

sharing payments to Chicago, and particularly one of approximately $19,000,000 on January 5, 1975.

On December 16, 1974, following negotiations among the parties here, an agreement was reached permitting the employment of 600 patrol officers from the 1971 Patrolman's Eligibility Roster, the use of which had been enjoined, and a 1972 Police Woman's/Matron's Eligibility List. The agreement was presented to this court in the consolidated actions pending here with the consent of all of the parties except intervenor-defendants Louis Arado, et al., who hold positions on the 1973 Sergeant's Eligibility List and who were not directly affected by the agreement. The purpose of the agreement was to alleviate what was represented by the defendants to be a critical shortage of police officers in the City, occasioned in part by the preliminary injunction issued on November 7, 1974. The agreement was approved by an order directing that approximately 600 patrol officer vacancies be filled in three groups of 200 on January 2, 1975, February 2, 1975 and March 2, 1975, with 100 positions in each groups to be filled by blacks and Spanish surnamed males from the 1971 Patrolman's Eligibility List, 33 to be filled by females from the eligibility list based upon the 1972 Police Woman's/Matron's Examination, and 67 positions to be filled by other male persons from the 1971 Patrolman's Eligibility List.

On December 18, 1974, the District of Columbia court heard the Robinson plaintiffs' renewed motion for summary judgment and an order directing the temporary withholding of revenue sharing payments to the City. On the basis of briefs and oral argument and this court's November 7 findings, the court entered an order enjoining the Secretary and ORS Officials from making,

1. . . . further payments of federal revenue sharing funds to the City of Chicago pursuant to the State and Local Fiscal Assistance Act of 1972, 31 U.S.C.A. § 1221, et seq., until further order of this Court and in no event until:

a. Defendants advise this Court and counsel for plaintiffs that the City of Chicago is subject to a final court order in United States v. Chicago, Civ.A.No. 73 C 2080 (N.D.Ill.) and has formally assured defendants it will comply in all respects with said Order; and

b. Defendants have monitored the actual compliance of the City of Chicago with said final order and filed a report with this Court which shows that the City has taken adequate steps to comply with non-discrimination requirements and what such steps are;

2. That defendants shall thereafter continue to monitor the actual compliance of the City of Chicago with the non-discrimination requirements of the State and Local Fiscal Assistance Act of 1972 . . . ;

3. That plaintiffs' renewed motion for entry of order require defendant to promulgate regulations providing for deferral be and the same hereby is denied;

4. That defendants shall forthwith send a copy of this order to the Governor of Illinois and Mayor of Chicago; and

5. This Court shall retain jurisdiction for enforcement of this Order for determination of any related matter, and for any other appropriate purpose.

Having ignored the District of Columbia action for a year, the City immediately undertook a collateral attack on that court's order. It came here urging that the order was "void on its face"[3] and asked this court to enjoin the Robinson plaintiffs from enforcing the order and to order the ORS Officials to con-

3. Tr. Dec. 23, 1974, p. 19.

tinue making revenue sharing payments. That extraordinary contradictive relief was denied. Compare, Hinton v. Seaboard Airline Railroad Co., 170 F.2d 892, 895 (4th Cir. 1948).

The City then went to the Court of Appeals for this circuit on an appeal from this court's order denying the collateral injunction, and a petition to review the decision of the Secretary to discontinue revenue sharing payments pursuant to 31 U.S.C. § 1263(a). There it sought an emergency order on the Secretary and ORS Officials to disburse the funds in disobedience of the District of Columbia court's order. That relief was denied by the Court of Appeals on January 3, 1975, the court observing, "The City has a remedy [of intervention] in the District Court for the District of Columbia, whose order the City seeks to set aside, and in the Court of Appeals for the District of Columbia, on whom Congress has conferred authority to review orders of that District Court." (Order, Court of Appeals for the Seventh Circuit in Nos. 74–2048 and 74–2049, entered Jan. 3, 1975, p. 3.)

Only then did the City seek to intervene in the District of Columbia action and, on January 6, 1975, its request was granted. It then moved to dismiss the District of Columbia action. Its motion was denied. It moved to vacate or stay the order of December 18, 1974. That motion was denied. It then moved to transfer the District of Columbia action to this court pursuant to 28 U.S.C. § 1404(a). That motion was granted and the action came here and was docketed as No. 75C 79.

Meanwhile, on December 23, 1974, the City's officials proceeded to notify approximately 200 persons that they had been selected for certification and appointment as patrol officers pursuant to the interim order of this court entered December 16, 1974. The applicants were directed to report on December 28, 1974 for a physical examination and on that date those who passed the physical were notified to report to the police academy on January 6, 1975 to commence their training. The uncontradicted allegations in the pending motion made by the Camacho plaintiffs are that in reliance on that notice the applicants arranged their affairs so as to be able to attend the academy and, in many cases, terminated their employment in order that they would be able to do so. It should be noted that all of this occurred after the entry of the December 18 order in the District of Columbia terminating the payment of revenue sharing funds to the City and after two hearings in this court challenging that order without effect.

On January 2, 1975, the applicants who had previously been instructed to report on January 6, 1975 were notified not to do so because

It now appears unlikely that the federal revenue sharing funds due on Monday, January 6, 1975, will be received by the City on that date. Inasmuch as a substantial portion of these funds was to be used for the payment of police salaries, the Comptroller has suggested, and I have directed, that the proposed hiring of 200 police candidates on Monday, January 6, 1975, be deferred until this matter is resolved in the pending litigation in the federal court. I have also directed that the 200 candidates scheduled to report for training on Monday, January 6, 1975, be immediately notified of this unfortunate, but necessary decision.

The notice was signed by the Acting Superintendent of Police. Thus the interim hiring agreement approved December 16 was unilaterally suspended by the City. To date no patrol officers have been hired pursuant to the plan. It is this conduct which is the subject of the pending Camacho motion to compel compliance.

On January 13, 1975 the City presented its written motion to modify the December 18 order of the District of Columbia court by vacating those portions which enjoin the further payment to it

of revenue sharing funds. Before the motion was entertained, the transferred District of Columbia action was ordered consolidated with the previously pending actions, United States v. City of Chicago et al., No. 73C 2080, Robinson et al. v. Conlisk, Jr., et al., No. 70C 2220, and Camacho et al. v. City of Chicago et al., No. 73C 1252 and all parties agreed that all proceedings previously had and all evidence previously heard in those consolidated actions would stand as proceedings and evidence in the newly docketed and consolidated action, Robinson et al. v. Simon et al., No. 75C 79.

In support of its motion to modify, the City submitted the affidavit of Edward Bedore, Budget Director of the City, regarding the effect of the non-receipt of revenue sharing funds on the City. He stated that the non-receipt "would require . . . the cancellation of plans to hire an additional 600 police officers. . . ." The "additional 600 police officers" mentioned in Bedore's affidavit were those contemplated by the interim hiring agreement of December 16, 1974.

On January 15 and 16, 1975, testimony was adduced in respect to the City's alleged need for revenue sharing funds. Mr. Bedore and Clark Burrus, Controller of the City, testified. Significantly, neither placed a dollar cost on the implementation of the interim hiring agreement.

On January 20, 1975, the Government as a litigant in No. 73C 2080, and in behalf of the Secretary and ORS Officials in 75C 79, filed its response to the City's motion to modify the order of December 18. In that response the Government, consistent with the position it had taken in behalf of the defendant officials when the action was pending in the District of Columbia, stated that the order should be modified as requested by the City. It went on to state, however, that in view of the City's refusal to implement

the interim hiring agreement and to give assurances that it would comply with this court's order of November 7, 1974, the Secretary had concluded that further revenue sharing payments should not be made to the City.

There followed a series of motions to intervene by a group of female patrol officer aspirants (Carolyn Burauer, et al.) as plaintiff, a group of male patrol officer aspirants occupying positions on the 1971 Patrolman's Eligibility Roster (Roy Isakson, et al.) as defendants and a group of candidates for promotion to lieutenant occupying positions on the 1970 Lieutenant's Eligibility Roster (Nicholas McNamara, et al.) as defendants. Each group asserted that they were not adequately represented by the existing parties. Unlikely as that allegation is in view of the fervor with which these cases have been litigated to date, in view of the sensitive issues raised here and the desirability that they be fully and competently ventilated by counsel representing persons having a direct interest in the outcome, the motions to intervene were granted.[4]

On March 10, 1975 the consolidated cases proceeded to trial on the merits and pursuant to Rule 65(a)(2), Fed.R. Civ.P. It was the court's intention to rule on the City's motion to modify the December 18 order and the Camacho plaintiffs' motion to compel compliance with the interim hiring agreement prior to the commencement of the trial. However, on reflection the wiser course appeared to be to get the trial underway and then rule on the motions. Such was not to be until now.

On March 7 and 14, 1975 defendant James M. Rochford, Superintendent of Police, announced his intent to make an unspecified number of "temporary" promotions to the rank of sergeant. The action was taken without leave of court or notice to any of the parties.

---

4. For similar reasons a group of candidates for promotion to sergeant (Louis Arado, et al.) were permitted to intervene as defend-ants prior to the preliminary injunction hearing held in June, 1974.

On March 10, 1975 sixteen sergeants were promoted to lieutenant without notice or leave of court.

On March 12, 1975, defendant Charles A. Pounian, Secretary of the Civil Service Commission announced a new police officer examination to be given April 19, 1975 (with applications due by April 4, 1975). While the examination is evidently the one mentioned by defendants' expert witnesses Guion and Alvarez during the preliminary injunction hearing last June, Pounian's announcement of it was made without leave of court or notice to any of the parties.

These recent unilateral personnel actions triggered a wave of motions seeking in trial preliminary injunctive relief by every party except the intervening lieutenant candidate group. Even intervenor-defendants Isakson, et al. (1971 Patrolman's Eligibility List) and intervenor-defendants Arado, et al. (1973 Sergeant's Eligibility List) who have previously supported defendants' positions challenged the actions as they affect their personal interests.

On April 7 those in trial motions for preliminary relief were ruled upon from the bench. The reasons for those rulings need not be elaborated here. Suffice it to say that the preliminary relief in respect to promotions to the rank of lieutenant was denied because there had not been a prior request for that relief, the promotions were made before the motion was presented and the City assured the court that additional lieutenant promotions will not be made prior to the entry of an order by the court on the validity of the 1970 Lieutenant's Eligibility Roster. Insofar as the new patrol officer examination and the methods of selecting "temporary" sergeants are concerned, defendants have been left to their own devices (subject, of course, to the November 7, 1974 injunction) with the proviso that no appointments to patrol officer or promotions to "temporary" sergeant shall be made prior to a full disclosure to the court and the parties of the ingredients and the results of the new methods of selection in accord with a draft order entered April 16. This approach was taken at the behest of the City to protect the methods of selection from pre-use disclosure.

And so we turn to the City's motion to modify the December 18 order and the Camacho motion to compel compliance with the December 16 interim hiring agreement and order.

## II. THE CITY'S MOTION TO MODIFY THE DECEMBER 18 ORDER

At the threshold the Robinson plaintiffs contend that the December 18 order cannot be modified here because it was a final judgment subject to review only by a timely motion for rehearing made within 10 days of its entry under Rule 59(a)(2) of the Federal Rules of Civil Procedure or by a timely appeal to an appropriate court of appeals. Alternatively, plaintiffs urge that at the very least the December 18 order embodies the law of the case which must control here until reviewed on appeal. The contentions are not well founded.

■ It is clear from the record that the December 18 order was intended as a preliminary or temporary restraint on the payment of revenue sharing funds to the City. The plaintiffs' motion, in response to which the order was entered, was based on the preliminary findings made here on November 7, and urged a "temporary escrow" of the City's revenue sharing payments. The order contemplates the future entry of a final order here which it intends to embrace. Should the City ultimately prevail here on the issues found against it in the preliminary injunction proceeding, plaintiffs could not seriously urge that it had nonetheless permanently lost its revenue sharing funds because the December 18 order was a final adjudication. Yet that would be the result were plaintiffs' finality argument sound.

■ It appearing that the December 18 order was intended to be and is a preliminary injunction, the District of

Columbia court had continuing jurisdiction to modify it in any way for good reason. 7 Moore's Federal Practice, ¶ 65.07. And that same authority travelled with the action when it was transferred here under 28 U.S.C. § 1404(a).

Of equal significance is the fact that the December 18 order did not adjudicate all of the claims in the case. By their complaint, the Robinson plaintiffs seek, *inter alia,* a "permanent injunction . . . prohibiting the defendants from permitting the City . . . to retain any federal revenue sharing funds disbursed to it in any period in which the [Chicago Police Department] is found to have engaged in racially discriminatory employment practices." Thus plaintiffs seek an order on the Secretary and the ORS Officials, requiring them to recapture revenue sharing funds previously paid to the City. That claim was not adjudicated by the December 18 order. In these circumstances, Rule 54(b) of the Federal Rules of Civil Procedure provides that the order is "subject to revision at any time before the entry of [a] judgment adjudicating all the claims . .. . ." absent an express direction that a final judgment be entered on less than all the claims. That determination was not made.

■ Nor are we bound to the conclusions of the December 18 order by the doctrine of the law of the case. No final order has been entered on the subject of revenue sharing nor has there been an interlocutory review resulting in the articulation of a controlling legal principle by a court of superior jurisdiction. So long as the action resided in the District of Columbia court there were compelling reasons of comity for this court to abide by the conclusions reached there but now that the action is here the December 18 order is in law an interlocutory order of this court subject to modification at any time for good reason.

For its part, the City makes two assertions which it maintains compel modification of the December 18 order. First it urges that it was an indispensable party to the District of Columbia action; that it was not a party when the order was entered; that accordingly those provisions which are adverse to its interests must be vacated. Its second peremptory argument is that the order does not contain findings, conclusions and reasons as required by Rules 52(a) and 65(d) of the Federal Rules of Civil Procedure, nor is it drawn with the degree of particularity required by Rule 65(d).

■ The Rule 65(d) particularity contention can be readily disposed of. In the first place, it is doubtful that the City can complain of the terms of an injunction directed against another. In any event, the injunctional provisions of the December 18 order are drawn with particularity. There can be no doubt as to the conduct which is prohibited. Thus, the order does not run afoul of either the Rule or the Supreme Court's recent decision in Schmidt v. Lessard, 414 U.S. 473, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974), upon which the City relies.

The indispensable party and the 52(a), 65(d) findings, conclusions and reasons arguments require more attention. However, in light of the present posture of the action they are not well founded.

■ Assuming, without deciding, that the City was "indispensable" to the action when it was brought (Rule 19(b), Fed.R.Civ.P.), and assuming further, without deciding, that its intentional failure to seek intervention prior to the entry of the December 18 order does not preclude it from complaining of its non-joinder (see, Provident Tradesmen's Bank and Trust Co. v. Patterson, 390 U.S. 102, 114, 88 S.Ct. 733, 19 L. Ed.2d 936 (1968)), the problems attendant non-joinder have been obviated. The December 18 order was not based on any evidence which was adduced in the City's absence. Its factual footings were the findings entered here in proceedings in which the City was joined

and participated. All the District of Columbia court did was conclude, in light of the findings entered here, that the Secretary and ORS Officials could no longer disburse federal funds to the City for use in its police department.

Following its tardy intervention, the City was afforded the opportunity in the District of Columbia court to challenge the correctness of that legal conclusion. By its successful motion to transfer the action here it has been afforded a second opportunity by this motion. In these circumstances, surely we would exalt form over substance were we to hold that the December 18 order must be vacated solely because the City was not a party to the action when the order was entered.

■ Of course findings of fact, conclusions of law and reasons for the issuance of the December 18 injunction are required by Rules 52(a) and 65(d). And if the order does not comply, it should be set aside. Chicago Area Military Project v. City of Chicago et al., 492 F.2d 1246 (7th Cir. 1974). But the requirements of the Rules were met in the District of Columbia and certainly they are met in the present posture of the case.

If the City's position is that the District of Columbia court was obliged to enter its own findings of discrimination based upon evidence adduced in that court, it misses the thrust of the December 18 order and the written memoranda which preceded it. On April 4, 1974, in an unpublished memorandum the court held that the Secretary and the ORS Officials were under a non-discretionary duty to enforce the anti-discrimination provisions of Section 122(a) of the Act by taking one of the alternative courses prescribed by Section 122(b). Then on June 28, 1974 it held, again by way of an unpublished memorandum, that referral by the Secretary and ORS Officials of the Robinson plaintiffs' complaint to the Attorney General pursuant to Section 122(b)(1) satisfied the duty to en-

force "until such time as non-compliance is determined by the court." Thereafter the court was apprised of the findings of this court, entered in an action brought by the Attorney General against the City, that the City's police department had engaged in discriminatory employment and promotion practices. It was undisputed that the police department was being funded in part by federal revenue sharing money. In light of its earlier rulings the District of Columbia court concluded that the Secretary and ORS Officials must discontinue revenue sharing payments to the City. The court's conclusions and reasons for the injunction were spelled out in its memoranda and the only finding crucial to the result was that this court had found discriminatory employment practices in the City's police department.

If that collateral use of this court's findings was improper (and we do not mean to suggest that it was), the City, upon intervening, could have obtained review of the December 18 order in the Court of Appeals for the District of Columbia. Instead, it brought the case here under 28 U.S.C. § 1404(a) and agreed that the case should be consolidated with the other actions pending here. It also agreed that all prior proceedings had in the other consolidated actions—which included the earlier findings of discrimination—would be considered in the transferred revenue sharing case. In these circumstances the December 18 order enjoys the direct support of the findings made here on November 7.

For the foregoing reasons, we conclude that the December 18 order is not subject to challenge upon the ground that it is not supported by findings, conclusions and reasons as required by Rules 52(a) and 65(d).

■ In short then, there is no bar to the City's motion to modify as the Robinson plaintiffs contend. Nor is the order subject to automatic modification as the City contends. The order is not "void on its face." It was entered by a

court of competent jurisdiction [5] in the exercise of its discretion. By transfer it has become the interlocutory order of this court. Thus, the City's motion asks that we review the legal correctness of the order and exercise our equitable discretion and modify it.

Section 122(a) of the State and Local Assistance Act of 1972, 31 U.S.C. § 1242(a) is unequivocal:

No person in the United States shall on the ground of race, color, national origin, or sex be excluded from participation in, be denied the benefits of or be subjected to discrimination under any program or activity funded in whole or in part with funds made available under [the Act].

It is undisputed that the City has used a substantial portion of the funds received by it under the Act to fund its police department. Specifically, during the period December 11, 1972 (the date of the first payment) through September 30, 1973 it used $69,000,000 of $94,000,000 for its police department and a comparable amount during the first three quarters of 1974. On November 7, 1974, this court found prima facie that the City's police department had engaged in sexually and racially discriminatory policies and practices in respect to the employment and promotion of police officers and that the City had failed to rebut that prima facie showing.

█ Those findings lead to the conclusion that the City has used more than $135,000,000 in revenue sharing funds in violation of Section 122(a) of the Act, and the likelihood is that continued disbursement of those funds would result in additional violations of the Act. To date, the City has not shown that it has remedied the policies and practices of the department which have been found wanting.[6] The question that emerges is whether these conclusions warrant the continuation of the preliminary restraint that has been issued against the Secretary and ORS Officials prohibiting them from making additional revenue sharing payments to the City until the issues in these cases are finally decided. We believe the answer to that question is in the affirmative.

█ Where recipients of federal funds have engaged in unlawful discrimination, courts have been quick to require that federal agencies refrain from participating in the discriminatory practices, and exercise affirmative duties to police compliance and prevent constitutionally and statutorily proscribed discrimination. In NAACP Western Region v. Brennan, 360 F.Supp. 1006, 1012 (D.D.C.1973), the district court held that "both Title VI and the Fifth Amendment impose upon Federal officials not only the duty to refrain from participating in discriminatory practices, but the affirmative duty to police the operations of and prevent such discrimination by State or local agencies funded by them."

To the same effect is Green v. Kennedy, 309 F.Supp. 1127 (D.D.C.1970). There a federal court in Mississippi had held that certain private schools in Mississippi practiced racial discrimination. In a separate proceeding in a federal court in Washington, the Secretary of the Treasury and Commissioner of In-

5. No question has been raised as to either subject matter jurisdiction or plaintiffs' standing to maintain the action. We are satisfied that jurisdiction is present under 28 U.S.C. §§ 1331, 1361, 2201, 2202 and 5 U.S.C. §§ 701–706. Plaintiffs have standing. Sierra Club v. Morton, 405 U.S. 727, 92 S. Ct. 1361, 31 L.Ed.2d 636 (1972); Data Processing Service v. Camp. 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); Diggs v. Schultz, 152 U.S.App.D.C. 313, 470 F.2d 461 (1972), cert. denied, 411 U.S. 931, 93

S.Ct. 1897, 36 L.Ed.2d 390 (1973); Apter v. Richardson, 510 F.2d 351 (7th Cir. 1975).

6. The new patrol officer examination has been announced as has the new method of selecting temporary sergeants. However, neither the examination nor the methods of selection have been disclosed to the court or the other parties to these actions. To safeguard the examination and methods of selection and at the City's behest, the court has not required pre-use disclosure.

ternal Revenue were ordered on constitutional and statutory grounds not to approve pending or future applications for tax exempt status for those private schools or permit tax exempt status for contributions to the schools in the absence of an affirmative determination that compliance with the anti-discrimination requirements had been achieved.

Similarly, in the same case, Green v. Connally, 330 F.Supp. 1150 (D.D.C. 1971), aff'd sub nom. Coit v. Green, 404 U.S. 997, 92 S.Ct. 564, 30 L.Ed.2d 550 (1971), after ordering Treasury officials to cease all support of the Mississippi private schools which practiced racial discrimination, the court barred any renewals of assistance until the private schools assured full compliance with non-discrimination standards and the federal defendants had determined compliance. 330 F.Supp. at 1154, 1155, 1173–77, 1179. In holding that "[c]learly the Federal Government could not under the Constitution give direct financial aid to schools practicing racial discrimination," id. at 1164, the court required federal officials to make an "objective evaluation" of the compliance before renewing assistance.

Most significantly, in Adams v. Richardson, 351 F.Supp. 636 (D.D.C. 1972), aff'd, 156 U.S.App.D.C. 267, 480 F.2d 1159 (1973), plaintiff charged that HEW had failed to carry out its statutory responsibilities to correct discrimination by school districts receiving federal funds. HEW had declined to take any enforcement action against those recipients of its funds who were under local federal court orders to desegregate on the ground that the local courts had full charge of the matter, and any action on its part might conflict with the Justice Department's litigation and create conflicts among the courts. The District of Columbia District Court disagreed and ordered HEW to carry out its own independent enforcement obligations.

The Supreme Court has held more than once that public funds or benefits may not be extended to governmental agencies which practice racial discrimination. See Norwood v. Harrison, 413 U.S. 455, 93 S.Ct. 2804, 37 L.Ed.2d 723 (1974); Gilmore v. City of Montgomery, 417 U.S. 556, 94 S.Ct. 2416, 41 L.Ed.2d 304 (1974). The same standards apply to the federal Government through the Fifth Amendment. Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954); NAACP Western Region v. Brennan, supra, at 1011.

Nor does the decision of the Court of Appeals for the Seventh Circuit in Gautreaux v. Romney, 448 F.2d 731 (1971), run counter to the notion that a federal court should enjoin the disbursement of federal funds being used in a program which engages in discriminatory practices or policies. In Gautreaux an order was entered withholding Model Cities' funds from the City of Chicago. The Court of Appeals reversed the order because that particular program was in no way related to the adjudicated discriminatory practices of the Chicago Housing Authority and because there were no adjudicated findings that the Model Cities program had been improperly administered or was tainted with racial discrimination. In short, the Court of Appeals held that it was improper to terminate funding of a program not tainted with discrimination in order to bring about a cure of a separate program found to be tainted.

In contrast here there is no question that large amounts of revenue sharing funds have been and will be used to finance the Chicago Police Department the hiring and promotion practices of which have been found to be discriminatory.

 The City argues, however, that by its terms Section 122(b)(2) of the Act, 31 U.S.C. § 1242(b)(2), prohibits the termination of revenue sharing funds upon the grounds of discrimination in employment. That section, in speaking to the duty of the Secretary to take steps to seek compliance with the anti-discrimination provisions of Section 122(a) provides that he may

refer the matter to the Attorney General or "exercise the powers and functions provided by Title VI of the Civil Rights Act of 1964 . . . ." By reference to Section 604 of the Civil Rights Act of 1964 (42 U.S.C. § 2000d–3) [7] the City argues that funds may not be terminated upon the ground of an "employment practice" unless the "primary objective" of the federal assistance is to "provide employment." That restriction in the Act of 1964 cannot be regarded as limiting the explicit language of Section 122(a) of the 1972 Revenue Sharing Act that no person shall "be subjected to discrimination under any program or activity funded in whole or in part with funds made available under [the Act]." The reference to Title VI in the Revenue Sharing Act was to incorporate or suggest the utilization of the administrative procedures provided by Title VI to police the use to which federal revenue sharing funds were being put.

In addition, the City argues that the reference to Title VI in Section 122(b)(2) carries with it the additional limitation of Section 602 of the Civil Rights Act of 1964 (42 U.S.C. § 2000d–1) which states that the termination of federal fiscal assistance "shall be limited in its effect to the particular program, or part thereof, in which such noncompliance has been so found . . . ." The City urges that the provision is applicable here because evidence adduced in support of the motion to modify shows that more than half of the current revenue sharing allotments would go to the City's fire department and the Chicago Public Library and not the police department. Thus the City urges that the December 18, 1974 order violates that Congressional limitation and it asserts that the Seventh Circuit Court of Appeals has ruled that Section 602 is as applicable to judicial termination of

funds as it is to administrative termination relying on Gautreaux v. Romney, 457 F.2d 124 (7th Cir. 1972).

The argument gives undue weight to the evidence adduced here in which the City's witnesses acknowledged a contemplated change in revenue sharing allocation so as to avoid the effects of the prior findings of discrimination in the police department. It also ignores the Robinson plaintiffs' prayer for repayment by the City of funds already unlawfully spent, which it should be noted is now pressed by the United States in its action against the City.

■ Thus, an order has been entered upon a showing that revenue sharing funds have been used impermissibly by the City. The question is should future payment of those funds be suspended until the police department either comes into compliance with the law or the City makes a showing that federal funds will not be impermissibly used. The scope of the order is not too broad for while only 75% of the City's allotments has been used for the police department, those amounts total more than $135,000,000. That is the City's potential liability on the Robinson and Government claims for repayment. In these circumstances it cannot be said to have been an abuse of discretion for the court on December 18, to restrain future payments to the City which, absent a change in circumstances, would increase that potential liability.

For the foregoing reasons, the December 18 order is supported by the facts and the law and it was not an abuse of discretion for the District of Columbia court to enter it.

■ But what of the City's appeal to this court's equitable discretion to modify the order? Have conditions changed so as to render the order intolerable or inequitable? No change has

---

7. Nothing contained in this subchapter shall be construed to authorize action under this subchapter by any department or agency with respect to any employment practice of any employer, employment agency or labor organization except where a primary objective of the Federal financial assistant is to provide employment.

been shown. Indeed, to the extent that conditions have changed, they support continuation of the order.

In November we said, "It is far better in cases of this nature that the remedy come from the parties rather than the court." (385 F.Supp. at 561.) That statement was made in rejecting plaintiffs' request for preliminary mandatory quota relief and in light of the City's representations, made first during a pretrial conference in April, 1974 and extending through the evidentiary hearing in June, 1974 that a new patrol officer examination was being developed which would be ready for use in the fall of 1974.

The new examination was not forthcoming. Instead, the City went to the parties (except the intervening sergeant candidates) and obtained their agreement to an interim hiring program authorizing the employment of 600 patrol officers in groups of 200 from the 1971 Patrolman's Roster, the use of which had been enjoined, and the 1972 Police Woman's Roster. The consideration for the plaintiffs' agreement was a hiring formula in which blacks, Hispanics and women would be substantially represented.

The agreement was presented to the court as an agreed order. No statement was made that the agreement was conditional. The court, despite its reluctance to utilize quota hiring, entered the order on December 16 upon the City's representation that it was necessary to the effective operation of the police department. Notices went out to the first group of 200 prospective recruits pursuant to the order. The undenied allegations of the Camacho plaintiffs are that certain of the persons who received that notice quit their jobs in reliance on it.

On January 2, 1975, without notice to the parties or leave of court the City unilaterally suspended the interm hiring agreement asserting it was compelled to do so because of the termination of revenue sharing funds.

Evidence was adduced on the City's motion to modify with respect to the economic impact of the termination of revenue sharing funds. There was no showing that the interim hiring agreement was dependent on those funds. The best estimates were that the salary expenses attendant implementation of the agreement would have run some $350,000 for the first quarter of 1975. The conclusion is inescapable that the City cancelled the $350,000 interim hiring program in an attempt to lever loose $19,000,000 in revenue sharing funds.

Now the City has announced a new patrol officer examination given on April 19 to be followed by new methods of selection. It has also announced a "temporary" (i. e. interim) sergeant's program. Both have been undertaken unilaterally. There has been no consultation with the other parties to the actions. Hopefully these efforts will be productive. But we are told in the case of the new patrol officer selection procedures that the results may not be known for several months. The result is that to date the City has not remedied any of the statutory and constitutional shortcomings of its police department which were found to be present on November 7. All that can be said is that it has not hired any patrol officers since November 7 (although it agreed to do so) and it has not promoted any sergeants (although it hopes to do so on a "temporary" basis).

In these circumstances the December 18 order should not be modified enjoining the Secretary and ORS Officials from making additional revenue sharing payments to the City.

III. THE CAMACHO PLAINTIFFS' MOTION TO COMPEL COMPLIANCE WITH THE INTERIM HIRING AGREEMENT AND ORDER

What remains for decision at this time is the Camacho motion to compel defendants to comply with the interim hiring agreement and order of December 16.

The agreement was the result of negotiations among the parties. It was prepared by the parties and approved and executed by their counsel. It was then submitted to the court for its approval.

While the court regarded the order as permissive in nature—i. e., it permits the limited use of the 1971 Patrolman's Roster spelled out in the order—the parties chose to cast their agreement in mandatory terms. Thus the order provides that "approximately 600 vacancies shall be filled pursuant to this Order" and that "approximately 200 applicants . . . shall be certified . . . for inclusion in training classes to commence on or about January 2, 1975, February 2, 1975 and March 2, 1975."

■ Defendants have not offered any valid reason why they should not abide by their agreement. Clarion Corp. v. American Home Products Corp., 494 F.2d 860, 864–64 (7th Cir. 1974); Cummins Deisel Michigan, Inc. v. The Falcon, 305 F.2d 721, 723 (7th Cir. 1972). Neither fraud nor impossibility have been alleged or proved. Brotherhood of Locomotive Firemen and Engineers v. Bangor Aroostook Railroad Co., 127 U.S.App.D.C. 23, 380 F.2d 570 (1967). And despite the court's reluctance to compel quota hiring in the preliminary injunction order (United States v. City of Chicago et al., *supra*, at 561), the remedy to which the parties agreed is not illegal. Vulcan Society, Inc. v. Civil Service Commission, 490 F.2d 387, 391, 398–399 (2d Cir. 1973).[8]

The only circumstances which militate against enforcement of the agreement are defendants' new police officer examination given on April 19 and their new methods of selection. We are told, however, that the new candidates will not be identified for several months and because the examination and methods have been developed by defendants unilaterally, neither plaintiffs nor the court are aware of their contents. The new examination will be disclosed to the court and counsel for the parties on April 24 and the results of the examination no later than May 22. In these circumstances, we have concuded that compliance with the last two-thirds of the interim hiring agreement should be deferred until those results are known. But in good conscience those persons who were called for appointment as police officers in January, 1975 and who still want to be police officers are entitled to the benefits of the agreement. Accordingly, the motion of the Camacho plaintiffs for an order compelling defendants to comply with the interim hiring order of December 16, 1974 is granted in part. Defendants are ordered to proceed with the appointment, by June 2, 1975, of those persons who were selected and called in the first group of 200 under the terms of the order of December 16. The balance of the motion is denied without prejudice to its renewal after June 2, 1975.

The foregoing will stand as findings of fact, conclusions of law and the reasons for the decision under Rules 52(a) and 65(d), Fed.R.Civ.P., and an order in conformity therewith has been entered this date.

---

8. We also take notice of an order entered by the Court of Appeals for this Circuit on March 29, 1974 in United States v. City of Chicago, 495 F.2d 1376, in which the court directed another judge of this court to enter a consent decree which established a 50% minority hiring goal for the Chicago Fire Department.